## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES LAWSON, : | |
| : | |
| Plaintiff, : | |
| : | Civ. No. 22-4340 (KM) (JBC) |
| v. : | |
| : | |
| HUDSON COUNTY BOARD OF : | **OPINION** |
| FREEHOLDERS, et al., : | |
| : | |
| Defendants. : | |
| : | |

**KEVIN MCNULTY, U.S.D.J.**

Plaintiff Charles Lawson, formerly a pretrial detainee at Hudson County Correctional Facility ("HCCF"),[1] has filed a civil rights complaint alleging claims under 42 U.S.C. § 1983. In a prior order, I granted Lawson leave to proceed *in forma pauperis*, and noted that the complaint would be screened in due course pursuant to 28 U.S.C. § 1915A. DE 6. Upon having screened the complaint and accompanying supplemental filings,[2] for the reasons below, I will dismiss it with prejudice in part and without prejudice in part.

## I.    BACKGROUND

### A.  Factual Allegations

For screening purposes, I accept the well-pleaded, plausible allegations in Lawson's pleadings as true.

---

[1] Lawson was a pretrial detainee at HCCF when he filed this complaint. On October 12, 2023, Lawson advised the Court that his current address is the Cumberland County Jail. DE 8.

[2] Lawson's allegations comprise nearly 70 pages and are contained in multiple submissions filed between June 28, 2022, and October 3, 2022. DE 1, 1-2, 3, and 7. For convenience, I refer to them collectively as the "complaint."

By way of background, Lawson is one of a number of plaintiffs who sued the Cumberland County Correctional Facility ("CCCF") alleging CCCF failed to protect detainees from COVID-19.[3] Lawson's allegations in this case span a long period of time; they relate to his detention at CCCF, the decision to transfer him from CCCF to HCCF, and his detention at HCCF. He alleges generally that both CCCF and HCCF failed to enact appropriate policies and protocols to protect him from COVID; that personnel at both facilities were deliberately indifferent to his serious medical needs after he contracted COVID; and that officials at CCCF retaliated against him for initiating COVID-related lawsuits while detained there. A more specific recounting of Lawson's complaint is a somewhat difficult endeavor, as his allegations—which, as noted above, are nearly 70 pages, in four different filings—are not in chronological order and, at times, it is not clear whether he refers to his detention at CCCF or at HCCF. From his multiple submissions, I glean the following claims:

### 1.   The Plan to Transfer Detainees from CCCF to HCCF

Lawson alleges that the Cumberland County Board of Commission[er]s ("CCBC"), CCCF Warden and President of New Jersey Warden Association Eugene Caldwell, the Hudson

---

[3] *See, e.g., Brown v. Warren*, Civ. No. 20-7907, DE 43 (amended complaint), 332 (supplement to first amended complaint) (allegations by detainees at CCCF, including Lawson, alleging unconstitutional conditions of confinement during the COVID pandemic); *Lawson v. Smith*, Civ. No. 20-15705, DE 46 (Lawson's amended complaint alleging, *inter alia*, unconstitutional conditions of confinement during the COVID pandemic, deliberate indifference to serious medical needs, retaliation for "institut[ing] this action and two others in addition to being a class member of *Brown*"—all while he was held as a pretrial detainee in CCCF); *Wilcox v. Warren*, Civ. No. 21-39, DE 60 at 1–2 (order (1) denying Lawson's request for counsel because "Lawson, individually, filed a separate action, Civil Action No. 20-15705, that similarly concerns the COVID-19," where he is represented by pro bono counsel, (2) severing Lawson's claims concerning the conditions of his confinement and denial of medical care while he was held as a pretrial detainee at CCCF during the COVID-19 pandemic, and (3) directing the Clerk to open a new case (which was opened under Civ. No. 23-644) for Lawson's claims to proceed); *Lawson v. Caldwell*, Civ. No. 22-1324, DE 1 at 8 (habeas petition relating to "the poor conditions of confinement in" CCCF); *Lawson v. Cumberland Cty. Board of Chosen Freeholders*, Civ. No. 23-644, DE 1 (amended complaint alleging unconstitutional conditions of confinement at CCCF during COVID pandemic).

County Board of Freeholders ("HCBF"), former HCCF Director Ron Edward, and current HCCF Warden Oscar Aviles devised and/or participated in a plan to transfer detainees from CCCF to HCCF. [4] DE 1 at 7, 9–10. The purpose of this plan was to (1) "fill the void" left when HCBF "lost their [Immigration and Customs Enforcement ("ICE")] contract" (DE 1 at 5), and (2) "support the [CCBC] closing of [CCCF] after failing to have a policy[,] customs of abuse of inmates[,] . . . [and] failure to comply with [Center for Disease Control ("CDC")] guidelines" (DE 1 at 10).

### 2. Lawson's Transfer from CCCF to HCCF

Lawson was transferred from CCCF to HCCF on May 13, 2022. DE 1 at 7. He "was shipped out with 15 other inmates never tested before departure." DE 1 at 10. With CCCF Captain Bragg "at the helm" (DE 1 at 7), Lawson and the other inmates—all of whom were "civil litigants in [a] class action lawsuit and personal lawsuits"—were "[h]erded . . . out with S.O.G.[5]/Special Trained State Officers." DE 1 at 11. An S.O.G.—presumably a correction officer of some sort—"aggressively zip tied" him, did not allow him to take his medication, and "separated [him] from his [legal] papers" (DE 1 at 4–5), which "were essential to pending criminal accusations/indictments" (DE 1 at 7). Lawson "was zip tied, shackled, and cuffed for hours until reaching [HCCF]." DE 1 at 8. "[P]rior to being transferred," he wrote letters to

---

[4] The policy of transferring detainees from CCCF to HCCF was extensively litigated in the New Jersey state courts. *See Ford v. Caldwell*, No. CV 20-12655, 2023 WL 4248813, at *4 (D.N.J. June 29, 2023). The New Jersey Public Defender's Office challenged the contract on Sixth and Fourteenth Amendment grounds in the Superior Court of New Jersey and obtained a preliminary injunction prohibiting CCCF from transferring any inmate. *Krakora, et al. v. Cty. of Cumberland*, No. CAM-L-3500-20 (filed Oct. 22, 2020). The New Jersey Supreme Court declined to hear the matter and lifted the injunction. *Krakora for State v. Cty. of Cumberland*, 259 A.3d 288, *reconsideration denied sub nom. Krakora v. Cty. of Cumberland*, 262 A.3d 424 (N.J. 2021).

[5] Lawson does not define "S.O.G."

Caldwell about his "medical needs and mental health problems." *Id.* at 8. Lawson is

"claustrophobic and suffer[s] from anxiety." *Id.* at 8.

Caldwell "forced [Lawson] out of jail with S.O.G. separating [him] from his effects and

papers . . . in retaliation [for] being [a] civil litigant against [CCCF] in" multiple lawsuits. DE 1

at 11. Caldwell also "instruct[ed] Captain Braggs to be the principal officer in" violating

Lawson's constitutional rights. DE 1 at 11.

### 3.  Lawson's Detention at HCCF[6]

Upon arrival at HCCF, Lawson was "throw[n] on a tier . . . with others from Hudson,

Essex, Union, etc. No one was quarantine[d] first," which "created an outbreak." DE 1 at 10.

Lawson "was sick and wrote [the] medical department about [symptoms] of runny nose, fatigue,

etc. All to no avail." *Id.* "By the time [he] was tested[,] he was negative and felt a lot better";

however, he "still suffer[s] from long haul COVID from being infected in Cumberland County."

*Id.* Lawson also attempted, "to no avail," to obtain medical treatment while at HCCF in

connection with his exposure to black mold while detained at CCCF. DE 3 at 1. Eight days after

he arrived at HCCF, on May 21, 2020, Lawson submitted a form to the medical department,

stating: "I have been exposed to Black Mold and Covid 19. I have brain fog, fatigue, and

shortness of breath waking up gasping for air. Please contact Cumberland to see what levels of

[]toxins I was exposed to in C Pod where back mold was present." *Id.* at 11.

Cleaning supplies at HCCF "are kept locked in a closet . . . [u]nless assigned clean[-]up

workers are allowed to clean th[ei]r assigned 'common areas.'" DE 7 at 3. Cleaning implements

---

[6] Many of the allegations regarding Lawson's detention at HCCF come from a handwritten document Lawson filed that purports to contain evidence of unconstitutional conditions of confinement at HCCF during the COVID pandemic. DE 7. That document appears to be a duplicate of a document that has been filed in other suits challenging HCCF's COVID protocols. *See, e.g.*, *Smith v. Hudson Cty. Jail & Rehab. Ctr.*, Civ. No. 22-4258, DE 4; *Ford v. Caldwell*, Civ. No. 22-4500, DE 8.

and chemicals are kept in a supply closet and the chemicals are "watered down." *Id.* at 3–4. Detainees do not have access to the cleaning supplies "as needed." *Id.* Rather, "clean-up workers at 1:00pm and 9:00pm are only provided with chemicals to clean during those (2) time periods, only. Detainees aren't allowed at any time to obtain chemicals to clean out of the closet." *Id.* at 3 (capitalization and quotations omitted). The restroom contains the "strong stench of urine" even after the workers clean "once or twice a day," and the showers are only "cleaned once a day." *Id.* at 4. "Detainees normally have to steal chemical[s] to clean." *Id.*

"Masks aren't worn by officers at times" (DE 7 at 4); "[m]asks aren't always available" (*id.*); "[g]uards come onto units with no mask or it hanging under the[ir] chins" (DE 1 at 5); and "detainees on the E-4-North unit never wear masks unless they leave the unit" (DE 7 at 4). Additionally, there is "no consistency when [COVID testing is] provided, ranging from weekly, bi-weekly[,] or even many weeks longer." *Id.* And the testing is done by "civilians/outside contractors who don't provide directions or assure testing is done properly." *Id.* (quotations omitted).[7]

The inmates at HCCF are also not allowed access to the law library "because there is none just to secure more grant money." DE 1 at 5. Instead, a "computer has been placed on the units as an alleged form of compensation for depriving all detainees of the proper legal services and their using the law library for other purposes." DE 3 at 4. Additionally, "after being sent over two hours away" from CCCF to HCCF, lawyer visits are not in-person (DE 3 at 3–4), and phone and video calls are "plagued with various issues" (*id.* at 5).

---

[7] In addition to these allegations, Lawson filed a 13-page handwritten document with entries dated May 27, 2022, through June 27, 2022, detailing, *inter alia*, (1) the comings and goings of individuals who allegedly failed to wear masks at various times, (2) the circumstances under which individuals were allegedly tested for COVID and quarantined, and (3) individuals who allegedly were not tested for COVID.

### 4. Defendants, Claims, and Relief

Lawson names the following defendants: CCBC; CCCF Warden Caldwell; CCCF Captain Braggs; HCBF; HCCF; HCCF former Director Edwards; HCCF Warden Aviles; HCCF Lt. Williams; John Doe HCCF correctional officers 1–10; John and Jane Doe HCCF healthcare providers 1–10; and HCCF Medical Department.[8] DE 1 at 3, 9–12. Lawson seeks to hold these defendants liable for "deprivation of constitutional rights," retaliation, "*Monell* liability," and conspiracy. *Id.* at 12. He presents the following theories of liability.

CCBC is liable for participating in the plan to transfer detainees from CCCF to HCCF "2 ½ hours away out of pretrial detainees['] social dynamics, while inmates suffer more exposure to pandemic by cross-contamination." DE 1 at 10.  CCBC is also liable for "cruel and unusual punishment of [Lawson] being shackled for hours as a pretrial detainee" and for "placing [Lawson] in a gross disadvantage to sit with counsel, prepare a proper defense, and have client-attorney privilege." DE 1 at 10.

CCCF Warden Caldwell is liable for (1) forcing Lawson out of CCCF "with S.O.G. separating [him] from his effects and papers" and without his medication in retaliation for Lawson filing lawsuits against CCCF, (2) "[i]nstructing Captain Braggs to be the principal officer in" violating Lawson's constitutional rights, and (3) ignoring the "heightened risk of catching COVID-19 for pretrial detainees." DE 1 at 11.

CCCF Captain Braggs is liable for (1) failing to "consider risk in regards to shipping inmates to Hudson" and "[h]erd[ing] inmates out with S.O.G./Special Trained State Officers who

---

[8] Lawson lists "Medical Dept. Hudson County" as a defendant in the caption of his complaint; however, he does not list it in the "parties" section of the complaint. DE 1 at 1. Additionally, while Lawson lists "John and Jane Does healthcare providers" in the "parties" section of his complaint, he does not list them in the caption. DE 1 at 9.

aggressively gripped us up[,] zip tied us[,] and not let us pack our papers" in retaliation "against Civil Litigants in Class Action Lawsuit, and personal lawsuits." DE 1 at 11.

HCBF is liable for failing "to communicate with [John Doe correctional officers and Jane and John Doe medical staff] to create a conducive safeguard in dealing with COVID." DE 1 at 8.

HCCF is liable for failing to (1) "govern [HCCF]," (2) provide for the "rehabilitation and medical needs of pretrial detainees," and (2) "implement an active policy to protect [Lawson] from COVID-19, facilitate legal access to the court, oversee conducts of wardens/directors personnel during COVID-19." DE 1 at 3.

HCCF former Director Edwards is liable because he "was aware of the plan" to transfer inmates from CCCF to HCCF "at a time that was not conducive to pretrial detainee safety against transmission of COVID-19." DE 1 at 9.

HCCF Warden Aviles is liable for failing to (1) "enforce a policy pursuant to CDC guidelines to protect pretrial detainees in [HCCF]," (2) "adhere to basic mitigation strategies to reduce transmission of the virus," and (3) "administer his staff to safeguard inmates by providing hand sanitizer, more mask, disinfectant, COVID tracking, quarantine." DE 1 at 3. Aviles is also liable for "assist[ing] Cumberland County Defendants in conspiracy together to continue customs of liability, neglect, and deliberate indifference." DE 1 at 8.

HCCF correctional officer Lt. Williams, who "is in charge of the law library," and the "hierarchy of [HCCF]" are liable for failing "to provide access to the court by allowing [detainees] law library [access]." DE 1 at 8–9.

John Doe HCCF correctional officers 1–10 are liable for (1) failing "to maintain and operate [HCCF] effectively to protect inmates from constitutional infringement, law library, COVID-19, CDC guidelines ignored, failed to intervene with the blatant disregard to [Lawson's]

safety, no hand sanitizer, etc." (DE 1 at 9), and (2) failing "to communicate with [HCBF and Jane and John Doe healthcare providers] to create a conducive safeguard in dealing with COVID" (DE 1 at 8).

John and Jane Doe HCCF healthcare providers 1–10 are liable for (1) failure "to implement CDC guidelines, interims, and protocols to combat COVID-19 in the facility they are employed to do so," (2) the absence of a "platform for communication with custody in terms of being these with superior knowledge in healthcare," and (3) for failing "to communicate with [HCBF and John Doe correctional officers] to create a conducive safeguard in dealing with COVID." DE 1 at 8–9.

Lawson seeks injunctive relief in the form of "safeguards to combat COVID," as well as "monetary compensation." DE 1 at 5.

## II.     DISCUSSION

### A.  Standard of Review

District courts are required to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To state a claim, the complaint must allege "sufficient factual matter to show that the claim is

facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B. Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

9

A local government entity is a "person" for purposes of § 1983, *Bd. of the County Comm'rs of Bryan Cty., Ok. v. Brown*, 520 U.S. 397, 403 (1997), and may be liable under § 1983 if it has a policy or custom that violates a plaintiff's constitutional rights. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer."); *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) ("[A] municipality may be held liable [under § 1983] only if its policy or custom is the 'moving force' behind a constitutional violation."). A plaintiff has the burden of showing that a government policymaker "is responsible by action or acquiescence for the policy or custom." *Jiminez*, 503 F.3d at 250; *see also Warren v. Camden Cty. Corr. Facility*, No. 16-6766, 2017 WL 168915, at *2 (D.N.J. Jan. 17, 2017) ("Plaintiff must plead facts showing that the relevant policy-makers on the Camden County Board of Freeholders are 'responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'") (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A supervisor may not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, a supervisor can be liable if he or she enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, a supervisor may be held liable when "he or she participated in violating the plaintiff's

10

rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.*M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

### C.  Claims Against HCCF, CCCB, HCBF, and HCCF Medical Department

HCCF, as a correctional facility, is not a "person" acting under color of state law and, therefore, is not amenable to suit under § 1983. *Rolle v. Essex Cty. Corr. Facility*, No. 21-15198, 2022 WL 1044968, at *3 (D.N.J. Apr. 7, 2022) (ECCF is not a "person" subject to § 1983 liability); *Harris v. Hudson Cty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) (Hudson County Jail is not a person amenable to suit under § 1983). Accordingly, the claims against HCCF will be dismissed with prejudice.

Claims against HCCF "Medical Department" the claims will also be dismissed with prejudice because a prison medical department is not a "person" for purposes of § 1983 liability. *See Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)) (per curiam); *Godfrey v. Little*, No. 22-0885, 2023 WL 6276702, at *2 (M.D. Pa. Sept. 26, 2023) ("States and their derivative governmental institutions, including the Department of Corrections, prisons, and prison medical departments, are not 'persons' for purposes of a civil rights action.") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 70 (1989) (states and their derivative entities); *Phippen v. Nish*, 223 F. App'x. 191, 192 (3d Cir. 2007)).

CCBC and HCBF are not subject to suit because they are not separate legal entities from Camden and Hudson Counties. *See Brandon v. Holt*, 469 U.S. 464, 472 (1985) (county

department does not have an identity distinct from the county itself); *Hutchinson v. Bergen Cty. Sheriff's Off.*, No. 22-993, 2022 WL 1639153, at \*2–3 (D.N.J. May 24, 2022) ("Neither the Bergen County Board of Commissioners nor the Bergen County Sheriff's Office qualifies as a "person" subject to suit under § 1983."); *Gibson v. Owens*, No. 16-06362, 2018 WL 1509084, at \*5 (D.N.J. Mar. 27, 2018) ("Plaintiff has not pled sufficient facts to impose liability on the Freeholders, as these defendants are not separate legal entities from Camden County and are therefore not independently subject to suit.") (citing *Bermudez v. Essex Cty. D.O.C.*, No. 12–6035, 2013 WL 1405263, at \*5 (D.N.J. Apr. 4, 2013) (listing cases)); *Jenkins v. Camden Cty. Corr. Facility*, No. 16-6879, 2017 WL 465452, at \*1 (D.N.J. Feb. 3, 2017) ("the [Board of Freeholders] is not a separate legal entity from Camden County and is therefore not independently subject to suit"). Consequently, the claims against CCBC and HCBF will be dismissed with prejudice. I will, however, construe the CCBC and HCBF claims liberally as asserting a *Monell* claims against Cumberland and Hudson Counties.

> **D. Conditions of Confinement, Medical Indifference, and Retaliation Claims against Cumberland County, CCCF Warden Caldwell, and CCCF Captain Braggs Arising Out of Lawson's Confinement at CCCF during the COVID Pandemic and Lawson's Initiation of COVID-Related Litigation**

The claims against Cumberland County, CCCF Warden Caldwell, and CCCF Captain Braggs arising out of out of Lawson's confinement at CCCF—including CCCF's response to COVID, the allegedly deficient medical care Lawson received at CCCF, and the alleged retaliation he suffered in response to the lawsuits he initiated while detained at CCCF—will also be dismissed. Lawson already has lawsuits pending—including one matter in which he is represented by pro bono counsel and Cumberland County is a defendant (*see Lawson v. Smith*, Civ. No. 20-15705)—regarding COVID-related conditions at CCCF, the alleged deficient medical care he received while detained at CCCF, and the alleged retaliation he suffered at

CCCF in response to the COVID-related lawsuits he filed. *See id.*, DE 46 (amended complaint alleging, *inter alia*, unconstitutional conditions of confinement, medical indifference, and retaliation claims against Cumberland County, a former CCCF warden, CCCF John Doe correctional officers, and others)[9]; *Wilcox v. Warren*, Civ. No. 21-39 (DE 60) (order directing the Clerk to sever Lawson's claims and open a new matter, which was opened under Civ. No. 23-644); *Lawson v. Cumberland County Board of Chosen Freeholders*, Civ. No. 23-644, DE 2 (amended complaint asserting, *inter alia*, claims against a former CCCF warden, the CCCF medical provider, and the CCCF dining provider related to conditions of confinement, medical care, and dining at CCCF during the COVID pandemic).[10]

---

[9] *See also id.* at ¶ 2 ("The Jail failed to implement any meaningful strategy to protect inmates from COVID-19. The result was that Plaintiff contracted COVID-19, became extraordinarily sick and developed 'long COVID.'"), ¶ 5 ("The Jail and its personnel made matters worse by actively retaliating against inmates who instituted litigation to vindicate their constitutional rights."), ¶ 7 ("Plaintiff institutes this action to recover damages arising out of Defendants' violation of Plaintiff's constitutional rights, which caused his multiple COVID-19 infections and their sequelae), ¶ 33 ("Prior to November 2020, the Jail, the Warden and the COs did not implement any of these crucial COVID-19 mitigation strategies (or any others) with respect to the inmate population of the Jail."); ¶¶ 85–86 ("Plaintiff – as a class member of *Brown* – and the named plaintiffs in *Brown* were subject to harassment by the Jail, the Warden and the COs for their efforts to litigate the violation of their constitutional rights. Specifically, Plaintiff – who has instituted this action and two others in addition to being a class member of *Brown* – is called "Lawsuit Lawson" by the COs"); ¶ 110 ("Defendants provided no healthcare or treatment to inmates who invariably got infected with COVID-19"), ¶ 114 ("Defendants retaliated against inmates who exercised their constitutional right of access to the judicial system to complain about the improper conditions at the Jail"); ¶ 122 ('Defendants knew or should have known that their abject failure to implement any reasonable COVID-19 mitigation strategy, policy or protocol created a substantial risk that Plaintiff would become infected with COVID-19"), ¶ 125 ("Defendants were also deliberately indifferent to Plaintiff's objectively serious medical condition in violation of the Eighth Amendment of the United States Constitution because, Plaintiff tested positive for COVID-19 – an objectively serious medical condition – and received no medical treatment."), ¶ 134 ("Defendants were aware that Plaintiff had instituted pro se litigation against them with respect to the COVID-19 conditions at the Jail. This litigation is constitutionally protected activity."), ¶ 147 ("In addition to contributing to his COVID-19 illness, the unconstitutional policies and procedures of Cumberland County, among other things, also interfered with Plaintiff's ability to communicate with his criminal defense attorney and to prepare in the defense of his criminal trial."); *id.*, DE 15 (order appointing pro bono counsel).

[10] *See also id.* at 7 (incorporating supplemental claims filed in *Wilcox v. Warren*, Civ. No. 21-39, before the Court directed the Clerk to sever Lawson's claims and open a new matter); *Wilcox v. Warren*, Civ. No. 21-39, DE 19 at 8 (asserting claims against John Does and others for alleged retaliation for initiating COVID-related lawsuits and for "reckless disregard for inmates['] safety, diet, health, law library access [and] access to the courts"), *id.*, DE 22 (asserting retaliation and deliberate indifference claims), DE 23

Lawson may not circumvent the rules regarding amending and supplementing complaints by filing a new action. To the extent he seeks to add or supplement parties, claims, or allegations arising out of CCCF's COVID response, the alleged deficient medical care he suffered in response to COVID exposure while detained at CCCF, and the alleged retaliation by CCCF officials he experienced in response to the COVID-related lawsuits he initiated while detained at CCCF, he should do so by seeking to amend or supplement the complaints wherein he first raised such claims. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) ("Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'") (Alito, J., dissenting) (quoting *Co. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *Fabics v. City of New Brunswick*, 629 F. App'x 196, 198 (3d Cir. 2015) ("'As part of its general power to administer its docket,' a district court may dismiss a duplicative complaint.") (quoting *Co. River Water Conservation Dist.*, 424 U.S. at 817) *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) ("the court must [e]nsure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints"); *Yost v. Anthem Life Ins. Co.*, No. 3:18-CV-1522, 2019 WL 3451507, at *6 (M.D. Pa. July 30, 2019) ("when Plaintiff's attempt to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure looked doubtful, he filed a new action which the Court views as 'the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints'") (quoting

---

(asserting supervisory liability claims), DE 39 (asserting claims for interference with access to the courts, unconstitutional conditions of confinement and retaliation), DE 43 (asserting claims for retaliation by interfering with religious rights, and unconstitutional conditions of confinement related to the presence of black mold at CCCF).

14

*Walton* 563 F.2d at 71).[11] Accordingly, I will dismiss the claims against Cumberland County, CCCF Warden Caldwell, and CCCF Captain Braggs as duplicative of Civil Actions 20-15705 and 23-644.

I discuss potential retaliation claims against Caldwell or Braggs separately. Lawson does not appear to have asserted such claims against these two defendants in either Civil No. 20-15705 or Civil No. 23-644. He does name John Does, among others, in Civil No. 20-15705 (*id.*, DE 46 (amended complaint)), and alleges they retaliated against him in response to the lawsuits he initiated while detained at CCCF (*id.* at 18). It is not clear whether Lawson intends to move to amend one of those complaints to add retaliation claims against Caldwell and/or Braggs. Either way, however, I must dismiss the retaliation claims against Caldwell and Braggs here for failure to state a claim.

"To state a claim for retaliation, a prisoner must allege: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (cleaned up). Lawson engaged in protected activity by initiating and participating in lawsuits while detained at CCCF. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997); *Hawkins v. Brooks*, 694 F. Supp. 2d 434, 442 (W.D. Pa. 2010) ("Plaintiff has met the first prong of her

---

[11] *See also*, *e.g.*, *Wilcox v. Warren*, Civ. No. 21-39, DE 47 at 4 ("The Court finds that because Plaintiff Lawson is already represented by pro bono counsel in a separate action that similarly concerns the COVID-19 protocols at the Cumberland County Jail, appointment of counsel on behalf of Plaintiff Lawson in this action is not warranted. Plaintiff Lawson may consult with his counsel in the separate action, Civil Action No. 20-15705, to determine whether to assert any additional claims in connection with the conditions of his confinement at the Cumberland County Jail."); *Wilcox v. Cumberland Cty. Board of Commissioners*, 22-4672, DE 4 at 4 (dismissing duplicative claims where, "[t]o the extent the complaint raises concerns about Cumberland County's COVID-19 response, those claims are duplicative of Plaintiff's prior action, Civil No. 21-0039. In that action, the Court rejected Plaintiff's attempt to submit piecemeal supplements to the amended complaint in the absence of a formal motion under Rule 15" of the Federal Rules of Civil Procedure).

retaliation claims against these Defendants, as 'pressing charges' and/or filing civil lawsuits, as well as voicing complaints and/or filing grievances, are all constitutionally protected activities."). The alleged adverse action—defined as an action that would "deter a person of ordinary firmness" from exercising his First Amendment rights, *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)—includes (1) Caldwell "forc[ing]" Lawson out of CCCF "with S.O.G. separating [him] from his effects and papers" and without his medication and (2) Braggs, "at the helm," "[h]erd[ing] inmates out with S.O.G./Special Trained State Officers who aggressively gripped us up[,] zip tied us[,] and not let us pack our papers." DE 1 at 11. At this early stage of the litigation, I find that Lawson has sufficiently alleged adverse action; however, Lawson has not plausibly alleged that Caldwell or Braggs were involved in that adverse action. His allegations do not make clear that those defendants participated in the conduct alleged, nor does Lawson provide a factual basis sufficient to support an inference that Caldwell or Braggs directed or ordered the alleged retaliatory conduct.

And even if Caldwell and Braggs were allegedly involved in the adverse action, Lawson's claim would nevertheless fail for failure to plausibly allege causation—*i.e.*, that the alleged adverse actions were caused by his protected activity. To show that an adverse action was retaliatory, a plaintiff may rely on either direct evidence or an inference of retaliatory motive arising from (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

16

Here, Lawson speculates that the adverse actions of which he complains were taken in retaliation for his having filed civil rights complaints, but he offers insufficient factual support for this claim. Consider, for example, the timing. Lawson is a plaintiff in *Brown v. Warren*, Civil No. 20-7907, a lawsuit arising out of CCCF's response to the COVID pandemic, initiated in June 2020. Lawson also initiated COVID-related lawsuits in November 2020 (*Lawson v. Smith*, Civil No. 20-15705) and January 2021 (*Lawson v. Wilcox*, Civil No. 21-39, DE 60 (severing Lawson's claims and directing new case—Civ. No. 23-644—to be opened)). It does not appear that these suits include allegations against either Caldwell or Braggs, as they would naturally do it there was in fact retaliation. The retaliatory acts—the separation from his effects and aggressive manner of placing him in restraints—occurred sixteen months after the filing of the lawsuits. (DE 1 at 4 (indicating that Lawson was transferred on May 13, 2022); DE 1-1 at 2 (same)). On these facts—i.e., without a plausible allegation that the adverse actions he complains of closely followed his previous lawsuits or some other protected activity —there is no "unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action." *Lauren W. ex rel. Jean W.*, 480 F.3d at 267; *see also Escanio v. United Parcel Serv.*, 538 Fed. App'x 195, 200 (3d Cir. 2013) (a period of roughly three weeks between the protected activity and the adverse action, without more, was not unduly suggestive of retaliatory motive); *Graziano v. Pa. Dep't of Corr.*, No. 22-163, 2023 WL 6389756, at *23 (W.D. Pa. Sept. 30, 2023) ("[I]t is mere speculation on Graziano's part that Morgan and Fiscus' conduct was in retaliation for his legal filings. Morgan issued Graziano the [misconduct charge] four months after he told Morgan about his lawsuit. This time-lapse, without more, does not suggest that Morgan had a retaliatory motive.").

Lawson has also not plausibly alleged a pattern of antagonism coupled with timing that would suggest a causal link. That is not the sole means of establishing causation, but neither has he proffered any other circumstantial evidence supporting a plausible inference of retaliatory motive and causation. *Id*. Nor does he identify any other wrongful conduct or statements by Caldwell or Braggs that might directly support such an inference. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. The facts alleged here are not enough to "to raise a reasonable expectation that discovery will reveal evidence of" retaliation. *Id*.

Accordingly, even assuming that the claims against Caldwell and Braggs are not required to be asserted in one of Lawson's earlier suits regarding CCCF, those claims must be dismissed here for failure to plausibly allege retaliation.

### E. Conspiracy Claim Against Cumberland and Hudson Counties, CCCF Warden Caldwell, HCCF Former Director Edward, and HCCF Warden Aviles Arising Out of the Decision to Transfer Detainees from CCCF to HCCF

Lawson's claim against Cumberland and Hudson Counties, CCCF Warden Caldwell, former HCCF Director Edward, and current HCCF Warden Aviles arising out of their alleged "participation in a plan to transfer detainees from CCCF to HCCF (DE 1 at 7, 9–10) to (1) "fill the void" left when HCBF "lost their [ICE] contract" (DE 1 at 5), and (2) "to support the [CCBC] closing of [CCCF] after failing to have a policy[,] customs of abuse of inmates[,] . . . [and] failure to comply with [CDC] guidelines" (DE 1 at 10) must be dismissed. To the extent Lawson contends that these allegations support a conspiracy claim, he is mistaken. Lawson's allegation that Aviles "assisted Cumberland County Defendants in conspiracy together to

continue customs of liability, neglect, and deliberate indifference" (DE 1 at 8) also fails to support a conspiracy claim.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018). Once a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, he must "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009). Here, Lawson's conspiracy claim fails for two reasons.

First, his allegations are conclusory and, thus, are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678 (legal conclusions are "not entitled to be assumed true"); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (explaining, in the context of Section 1983, that "[t]he plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action") (cleaned up); *Martin v. Sec'y of Corr.*, No. 16-2060, 2018 WL 1158250, at *5 (M.D. Pa. Mar. 5, 2018) ("Martin cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to this conspiracy claim, Martin's conspiracy claim amounts to nothing more than mere conjecture and bare speculation.") (citation omitted).

Second, he has failed to identify a constitutional violation underlying the asserted conspiracy. *See Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (explaining that a conspiracy claim under Section 1983 "requires that the state actors took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights") (cleaned up); *Servias v. Caccia*, No.

20-14601, 2023 WL 4897587, at *9 (D.N.J. July 31, 2023) ("[T]he Court finds that Plaintiff's conspiracy claim against Caccia fails at the very outset because she has not, and cannot, establish that any constitutional violation has occurred."); *Gravely v. Speranza*, 408 F. Supp. 2d 185, 191 (D.N.J. 2006) ("Section 1983 does not create a cause of action for conspiracy to deprive a person of their constitutional rights without an actual deprivation of rights protected by the statute."). Lawson (1) speculates regarding the reasons for the plan to transfer detainees (DE 1 at 5, 10) and (2) alleges that Edwards participated in the transfer plan "at a time that was not conducive to pretrial detainee safety against transmission of COVID-19." (DE 1 at 7, 9–10) These allegations do not plausibly allege a constitutional deprivation. Transferring detainees to Hudson County, a facility that had more space after it ceased housing immigration detainees, is not a constitutional violation, and may even be seen as a salutary measure for reduction of crowding. Of course many factors that go into transfer decisions and the timing of inmate transfers, including safety and security concerns, and the availability of staff and resources. An allegation that the transfers were scheduled at a time that was not optimal for COVID safety is not a sufficient basis to support a constitutional violation. Accordingly, this claim will be dismissed.

### F. Conditions of Confinement Claims Against Hudson County, HCCF Warden Aviles, John Doe HCCF Correctional Officers 1–10, and John and Jane Doe HCCF Healthcare Providers 1–10 Arising Out of the HCCF's Alleged Deficient COVID Protocols

Lawson's complaint, construed liberally, appears to assert claims against Hudson County, HCCF Warden Aviles, John Doe HCCF correctional officers 1–10, and John and Jane Doe HCCF healthcare providers 1–10 for unconstitutional conditions of confinement. These claims are asserted on the basis of deficient COVID protocols, including failure to quarantine detainees when Lawson believed they should have been quarantined (DE 1 at 10); inconsistent and improperly performed COVID testing (DE 7 at 4); limited availability of cleaning supplies (*id.* at

3–4); masks that "at times" are not worn by correctional officers, are worn improperly, or "aren't always available" (*id.* at 4; DE 1 at 5); and failure to enforce an unspecified CDC policy (DE 1 at 3, 8–9).

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and is violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226; *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component

21

requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter,* 501 U.S. 295, 298–99 (1991); *Stevenson*, 495 F.3d at 68 ("a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose") (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

The Third Circuit considered claims of inadequate prison COVID-19 procedures, many of them similar to the claims here, in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020). *Hope* explained that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated [or, here, minimized] their response" to the situation. *Id*. (quoting *Bell v. Wolfish,* 441 U.S. 520, 540 n.23, 99 S.Ct. 1861 (1979)).

The gravamen of Lawson's allegations is that he was dissatisfied with HCCF's COVID policy and cleaning schedule, and he believes detainees should have had unrestricted access to

cleaning chemicals and supplies. These allegations do not support a finding that the defendants acted with a culpable state of mind, nor do they rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement.

At the outset, to the extent Lawson claims his constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient because exposure alone does not violate the Constitution. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Bennett's one-sentence allegation . . . that he tested positive for COVID . . . is insufficient to state a claim for unconstitutional conditions of confinement. Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.").

Aside from potential exposure, Lawson also alleges that masks are not always worn or available; that detainees do not have access to cleaning supplies or hand sanitizer; and that detainees were not tested or quarantined when Lawson believes such testing or quarantining were warranted. These allegations do not establish that prison officials consciously disregarded a serious risk to Lawson's health or safety. Lawson does not allege, for example, that no testing, quarantining, or cleaning was occurring. To the contrary, his allegations establish that HCCF was attempting to take measures—such as providing masks, testing, quarantining, and daily cleaning—aimed at mitigating the threat of COVID-19. *See Hope*, 972 F.3d at 330 (noting the "challenges inherent in the detention setting"). For example, Lawson alleges that he was tested for COVID-19 after he "wrote [the] medical department about [symptoms] of runny nose,

23

fatigue, etc." (DE 1 at 10 (alleging that "[b]y the time [he] was tested[,] he was negative and felt a lot better"); DE 7 at 4 (COVID testing is provided)); there are "clean-up workers at 1:00pm and 9:00pm" who are "provided with chemicals to clean during those (2) time periods" (DE 7 at 3); the workers clean the restroom "once or twice a day," and the showers are "cleaned once a day" (*id.*); and masks are worn sometimes (*id.* ("detainees on the E-4-North unit" wear masks when they leave the unit; "at times" masks are not worn by officers)).

Further, imperfections in masking, testing, and quarantining procedures—particularly in the challenging environment of a detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *Pumba v. Kowal*, No. 22-2082, 2022 WL 2805520, at *5 (E.D. Pa. July 18, 2022) ("Pumba alleges that Sergeant Kowal permitted a pod worker who tested positive for COVID-19 to clean Pumba's cell block without wearing a mask and presumably exposing Pumba to COVID-19. These allegations are insufficient to allege a plausible constitutional claim that Sergeant Kowal failed to adequately protect him from exposure to COVID-19."); *Chapolini v. City of Philadelphia*, No. 22-284, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) ("Chapolini also does not sufficiently allege that prison officials at CFCF knew of and disregarded an excessive risk to his health and safety. Instead, he only states that he contracted COVID-19 and that he likely got it because quarantine protocols at CFCF were either inadequate or improperly followed. This is also inadequate to

state a plausible claim because his COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation.").

Additionally, Lawson's assertions that cleaning supplies are watered down, testing is done improperly, and an unspecified CDC guideline was not followed, are conclusory and insufficient to support a claim premised on unconstitutional conditions of confinement. *See Iqbal*, 566 U.S. at 678 (complaint does not suffice if it offers merely "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557); *see also Vega v. Aviles*, No. CV 23-651, 2023 WL 2263715, at *4 (D.N.J. Feb. 28, 2023) ("The gravamen of Vega's conditions-of-confinement claim appears to be that Aviles allegedly failed to comply with an unspecified state mandate for 'hospitals and institutions' regarding COVID-19 policies. The manner in which the prison protocols supposedly fell short is not specified. This conclusory allegation does not support a finding that Aviles acted with a culpable state of mind, nor, even assuming it to be true, does it establish that conditions in the Jail rose to the level of 'cruel and unusual punishment' necessary to state a claim for unconstitutional conditions of confinement. (citing *Manning, v. Hudson County*, No. 17-3450, 2019 WL 1423262, at *6 (D.N.J. Mar. 29, 2019) ("Plaintiff fails to state a claim for relief because his allegations are vague and conclusory and contain too little factual matter for the Court to determine whether his civil rights were violated by Defendant.")).

Moreover, a policy requiring cleaning chemicals to be kept in a locked closet without unrestricted detainee access to those chemicals is not excessive in relation to HCCF's legitimate interest in maintaining safety while managing the spread of COVID-19. *See Bell v. Wolfish*, 441 U.S. at 535 (institutional security and effective facility management are valid governmental objectives that can justify restrictions on pretrial detainees); *Youngberg v. Romeo*, 457 U.S. 307,

325 (1982) (under the Due Process Clause, "whether respondent's constitutional rights have been violated "must be determined by balancing his liberty interests against the relevant state interests"); *Cooper v. Miller*, No. 20-2430, 2022 WL 4654852, at *7 (M.D. Pa. Sept. 30, 2022) ("Plaintiff's disagreement with the steps that have been taken by Defendants at SCI Rockview to mitigate the risk of his exposure to COVID-19 is simply insufficient to plausibly allege a constitutional violation").

For these reasons, Lawson's allegations do not raise a reasonable inference that his conditions of confinement amounted to unconstitutional punishment rather than good faith efforts to reduce the spread of COVID-19 and maintain safety and security at HCCF.

Finally, even if Lawson had alleged a constitutional violation on the basis of his conditions of confinement, his § 1983 claim would fail because he has not plausibly alleged that Aviles, John Doe HCCF correctional officers 1–10, or John and Jane Doe HCCF healthcare providers 1–10 acted with a culpable state of mind or were personally involved in the alleged deprivation. Nor has he plausibly alleged a policy, custom, or practice of Hudson County that caused the alleged constitutional deprivation, as required for *Monell* liability. *See Van Tassel v. Piccione*, 608 Fed. App'x 66, 69-70 (3d Cir. 2015) (allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient); *Martin v. Cumberland Bd. of Cty. Commissioners*, No. 23-3325, 2023 WL 4398492, at *4 (D.N.J. July 7, 2023) ("[A]lthough Plaintiff is clearly unhappy with the conditions of Hudson County, he has not alleged sufficient facts to show that the conditions in question were the result of policies or practices put into place by the named Defendants, or by the direct actions of those Defendants. Without allegations of specific policy decisions that were the moving force behind the alleged conditions, Plaintiff fails to state a plausible claim for relief against the named Defendants.").

Lawson alleges, for example, that defendants are liable for failing to: "communicate," "enforce a policy pursuant to CDC guidelines," "adhere to basic mitigation strategies," "administer . . . staff to safeguard inmates," "implement CDC guidelines, interims, and protocols," provide a "platform for communication," and "maintain and operate [HCCF] effectively."[12] These allegations are conclusory and in many respects vague, and they fail to provide a factual basis to link any of these defendants to the alleged wrongdoing. *See Twombly*, 550 U.S. at 555 (finding Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").

In short, the allegations do not establish that Lawson's conditions of confinement were cruel and unusual or amounted to unconstitutional punishment. Accordingly, Lawson's claims for unconstitutional conditions of confinement against Hudson County, HCCF Warden Aviles, John Doe HCCF correctional officers 1–10, and John and Jane Doe HCCF healthcare providers 1–10 will be dismissed.

---

[12] *See, e.g.*, DE 1 at 8 (Hudson County "is liable for failing to communicate with [John and Jane Does] to create a conducive safeguard in dealing with COVID."); *id.* at 3, 8 (Aviles is liable for failing to (1) "enforce a policy pursuant to CDC guidelines to protect pretrial detainees in [HCCF]," (2) "adhere to basic mitigation strategies to reduce transmission of the virus," and (3) "administer his staff to safeguard inmates by providing hand sanitizer, more mask, disinfectant, COVID tracking, quarantine."); *id.* at 8–9 (John and Jane Doe HCCF healthcare providers 1–10 are liable for (1) failure "to implement CDC guidelines, interims, and protocols to combat COVID-19 in the facility they are employed to do so," (2) the absence of a "platform for communication with custody in terms of being these with superior knowledge in healthcare," and (3) for failing "to communicate with [HCBF and John Doe defendants 1–10 Correctional Officers] to create a conducive safeguard in dealing with COVID."); *id.* at 1, 8 (John Doe HCCF correctional officers 1–10 are liable for (1) failing "to maintain and operate [HCCF] effectively to protect inmates from constitutional infringement, . . . COVID-19, CDC guidelines ignored, failed to intervene with the blatant disregard to my safety, no hand sanitizer, etc.," and (2) failing "to communicate with [HCBF and Jane and John Doe medical staff] to create a conducive safeguard in dealing with COVID.").

**G. Claims Against Hudson County, HCCF Warden Aviles, John Doe HCCF Correctional Officers 1–10, and John and Jane Doe HCCF Healthcare Providers 1–10 for Deliberate Indifference to Lawson's Serious Medical Needs**

The complaint, construed liberally, appears to assert claims against Hudson County, HCCF Warden Aviles, John Doe HCCF correctional officers 1–10, and John and Jane Doe HCCF healthcare providers 1–10 on the basis that these defendants were deliberately indifferent to his serious medical needs. These claims assert that (1) after his arrival at HCCF Lawson attempted, "to no avail," to receive medical treatment for "brain fog, fatigue, and shortness of breath" in connection with his exposure to black mold while detained at CCCF (DE 3 at 1, 11); and (2) at an unspecified time, Lawson "wrote [the] medical department about [symptoms] of runny nose, fatigue, etc.," but "felt a lot better" and "was negative" "[b]y the time [he] was tested" (DE 1 at 10).

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). To state such a claim, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

The Third Circuit has defined a "serious" medical need as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this element, courts consider factors such as "the

28

severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998). Further, where a facility has taken concrete steps towards mitigating the medical effects of COVID-19, "a prisoner will fall 'well short' of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely 'eliminate all risk' of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have." *Jacobs v. City of Philadelphia*, No. 22-1956, 2022 WL 4225621, at *2 (E.D. Pa. Sept. 13, 2022) (citing *Hope*, 972 F.3d at 220–31).

As an initial matter, it is not clear that Lawson has satisfied the first *Estelle* prong, i.e., that he plausibly alleged that he had a "serious" medical need. He alleges that at an unspecified time and for an unspecified duration he suffered from "brain fog, fatigue, and shortness of breath" (DE 3 at 11), and during another unspecified time he experienced symptoms of "runny nose, fatigue, etc.," but "felt a lot better" and "was negative" "[b]y the time [he] was tested" (DE 1 at 10). Lawson also alleges in conclusory fashion that he "suffer[s] from long haul COVID from being infected in Cumberland County"; he does not elaborate further. *Id*.

Lawson does not state how long his symptoms of brain fog, fatigue, shortness of breath, and runny nose lasted; he does not describe the duration or impact of these symptoms; he does not describe communications he had regarding his symptoms or replies (if any) that he received; he does not state what medical treatment he felt he needed and did not receive, whether he was "diagnosed by a physician as requiring treatment," or whether he had a preexisting underlying condition or extreme symptoms such that the need for hospitalization or other intervention would have been obvious to a layperson; and—as to his claim that he suffers from "long haul

COVID"—he does not describe symptoms he may still be experiencing, how often he may be experiencing those symptoms, or whether the alleged denial of treatment resulted in "a life-long handicap or permanent loss." *Atkinson*, 316 F.3d at 272–73. In short, Lawson asserts that he contracted COVID or something similar, as did millions of Americans. The most plausible inference to be drawn from the complaint as pleaded is that Lawson suffered flu-like symptoms, possibly as after-effects of COVID, lasting for an unspecified period of time.

Flu-like symptoms are indeed unpleasant and can even be debilitating for a number of days, but experiencing such symptoms, without more, does not give rise to a civil rights claim, as many courts have found. *See Marquez v. Aviles*, No. 22-6239, 2023 WL 2019622, at *3 (D.N.J. Feb. 15, 2023) (dismissing medical indifference claim where "[a]t most, the complaint appears to allege that Marquez fell ill with flu or Covid symptoms for some unspecified amount of time (although the symptoms are not described) and then recovered"); *Graham v. Aviles*, No. 22-5760, 2022 WL 16949131, at *3 (D.N.J. Nov. 14, 2022) ("To be sure, COVID-19 (if Graham in fact contracted COVID-19) may be a serious illness, particularly when coupled with underlying conditions that exacerbate the risk, but temporary symptoms, without more . . . are insufficient to establish a 'serious' medical need.").[13] The conditions that Lawson describes were not life-threatening, are not alleged to have resulted in a life-long handicap or permanent loss, and it is

---

[13] *See also, e.g., Est. of Lillis by & through Lillis v. Correct Care Sols., LLC*, No. 16-03038, 2018 WL 1569752, at *7 (D. Colo. Mar. 30, 2018) ("'flu-like symptoms' do not generally rise to the level of severity necessary to constitute a 'serious medical need.'"); *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *4 (N.D. Tex. Jan. 4, 2007) ("flu-like symptoms" did not constitute "serious harm" necessary to establish an Eighth Amendment violation); *Liggins v. Barnett*, No. 4-00-cv-90080, 2001 WL 737551, at *6 (S.D. Iowa May 15, 2001) ("The court has found no case in which a plaintiff suffering from flu-like symptoms . . . has been held to have had a serious medical need."); *Schwartz v. Jones*, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (failure to provide prisoner with aspirin for flu-like symptoms did not give rise to a federal constitutional claim for denial of medical care); *Ware v. Fairman*, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995) (describing flu as "not serious"); *Haberstick v. Nesbitt*, No. 97-6523, at *3, 1998 WL 472447, at *3 (E.D. Pa. Jul. 29, 1998) (flu-like symptoms could not form the basis of a deliberate indifference claim where prisoner presented no evidence that flu was a serious medical need).

not evident that they caused extreme pain or suffering of the sort required to state a constitutional violation. In short, the allegations, without more, lack sufficient detail to support an allegation of a serious condition. *See*, *e.g.*, *Hainey v. Carney*, No. 22-1387, 2022 WL 1308510, at *6 (E.D. Pa. May 2, 2022) ("Hainey's claims concerning Covid-19 are vague. While Hainey alleges that he tested positive for Covid-19, he does not allege the extent to which the virus affected him, what his symptoms were, and what medical care he required to treat those symptoms that he is claiming he did not receive. Absent additional information, it is unclear that Covid-19, as it affected Hainey, presented a serious medical need.").

Even assuming Lawson sufficiently alleged a serious medical need, however, he has failed to plausibly allege that John Doe HCCF correctional officers 1–10, or John and Jane Doe HCCF healthcare providers 1–10 were deliberately indifferent to that need. Deliberate indifference exists when a defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard requires that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew that inference. *Natale*, 318 F.3d at 582. As currently pleaded, Lawson's complaint does not plausibly allege that these defendants were aware of Lawson's symptoms or believed that Lawson faced a substantial risk of serious harm without additional treatment. *See*, *e.g.*, *Est. of Cheney ex rel. Cheney v. Collier*, 560 F. App'x 271, 274 (5th Cir. 2014) (prison nurse's inattention to prisoner's symptoms after he "complained of the flu and reported and exhibited flu-like symptoms including paleness body fatigue, chills, lack of appetite, and one or two instances of vomiting," did not rise to the level of an obvious or apparent risk to prisoner's health sufficient to infer that she acted with deliberate indifference); *Riggs v. Sisolak*, No. 22-465, 2023 WL 2877596, at *6 (D. Nev. Jan. 3, 2023) ("Riggs separately alleges that on several

occasions, he asked nurses in his housing unit for treatment for his COVID-related symptoms, and that each time, they said 'there was nothing they could do.' These allegations are too vague to support a colorable claim. Riggs does not allege which symptoms he sought treatment for. Nor does he plead that the nurses' alleged failure to treat his symptoms caused any additional injuries. Absent such allegations, the Court cannot infer that the nurses knowingly failed to respond to Riggs's serious medical needs, and that this lack of response harmed him.") (citation omitted). Indeed, Lawson has failed to plead facts suggesting the personal involvement of any of these defendants. *See*, e.g., *Chapolini*, No. 22-284, 2022 WL 815444, at *16 (E.D. Pa. Mar. 17, 2022) ("Chapolini has not tied any of his allegations to any defendant. Instead, he states generally that medical and/or correctional staff refused the complaints but does not allege any specific individuals involved with the refusals."); *Williams v. Pa. Dep't of Corr.*, No. 20-794, 2022 WL 1295796, at *4 (W.D. Pa. Apr. 5, 2022) ("Although Williams alleges that he experienced long-term exposure to coal ash and resulting physical symptoms, he fails to allege facts to tie his exposure and symptoms to any DOC Defendant. His conclusory allegations against groups of defendants are insufficient to support the personal involvement of any Defendant in actionable conduct.") (citing *Saisi v. Murray*, 822 Fed. App'x 47, 48 (3d Cir. 2020)), *report and recommendation adopted sub nom. Williams v. PA Dep't of Corr.*, No. 20-794, 2022 WL 1488426 (W.D. Pa. May 11, 2022).

Additionally, to the extent Lawson seeks to hold Aviles liable as a supervisor, he has not plausibly alleged the requisite personal involvement. He does not identify a specific policy, practice, or custom Aviles enacted, nor does he allege Aviles participated in the alleged deliberate indifference, directed any individual to violate Lawson's constitutional rights, or had contemporaneous knowledge of allegedly inadequate medical care. *See*, *e.g.*, *McAnulty v.*

32

*Mooney*, No. 13-03104, 2016 WL 26079, at *6 (M.D. Pa. Jan. 4, 2016) ("Absent a 'belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner,' the DOC Defendants, as non-physicians, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference.") (quoting *Innis v. Wilson*, 334 F. App'x 454, 456–57 (3d Cir. 2009). In short, Lawson does not plausibly allege that Aviles was personally involved in the alleged wrongs through direct participation and/or policymaking.

Lawson has also failed to identify a custom or policy enacted by Hudson County that was the "moving force" behind the alleged violation, and thus, has failed to plausibly allege a viable medical indifference claim against Hudson County. *See Sanford*, 456 F.3d at 314; *Jacobs v. City of Philadelphia*, No. 22-1956, 2022 WL 4225621, at *3 (E.D. Pa. Sept. 13, 2022) (deliberate indifference claim dismissed where plaintiff "has not alleged any facts about any serious medical needs or vulnerabilities he may have, nor has he alleged adequately that the City of Philadelphia had a policy or custom regarding COVID-19 protocols that amounted to deliberate indifference to his health, safety, or serious medical needs").

Accordingly, as Lawson has failed to provide sufficient factual support for his medical indifference claims—including identifying relevant customs or policies and pleading the requisite personal involvement of the defendants—the claims against Hudson County, HCCF Warden Aviles, John Doe HCCF correctional officers 1–10, and John and Jane Doe HCCF healthcare providers 1–10 for deliberate indifference to a serious medical need will be dismissed.

### H.  Claims Against Aviles, Lt. Williams, and John Doe HCCF Correctional Officers 1–10 for Denial of Access to the Courts

Lawson alleges that Lt. Williams, who "is in charge of the law library"; "[the] hierarchy of [HCCF]" (which I construe to include Aviles); and John Doe HCCF correctional officers 1–10

33

are depriving him of access to the courts because, instead of a "law library," a "computer has been placed on the units" (DE 1 at 5, 8–9; DE 3 at 4).

A claim asserting restrictions on access to a prison law library is considered an "access-to-the-courts" claim under the First Amendment. Inmates have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."). A prima facie claim of denial of access to courts requires allegations that (1) prison officials impeded plaintiff's access to courts and (2) plaintiff suffered actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Rivera v. Monko*, 37 F.4th 909, 915 (2022). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Rather, to allege actual injury, the plaintiff must allege that he lost an opportunity to pursue a nonfrivolous or arguable underlying claim and that there is no other available remedy for the lost claim. *Rivera*, 37 F.4th at 915 (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)). Put another way, the plaintiff must establish that the "denial of access to legal materials caused a potentially meritorious claim to fail." *Rivera*, 37 F.4th at 915; *see also Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*); *Welch v. Cty. of Burlington*, No. 21-4526, 2021 WL 3418680, at *6 (D.N.J. Aug. 5, 2021 (an inmate has no freestanding right to access to a law library); *Turner v. Shoemaker*, No. 21-1552, 2021 WL 4948092, at *2 (M.D. Pa. Oct. 25, 2021) ("Prisoner plaintiffs may state a due process claim upon which relief may be granted for lack of access to a law library, but the relevant inquiry is whether the lack of access has impeded the plaintiff's access to the courts.").

34

Here, Lawson has not plausibly alleged that the alleged deficiencies in access to legal resources at HCCF caused him to lose a nonfrivolous claim. *See, e.g., Saunders v. Criley*, No. 22-741, 2022 WL 17812447, at *2 (M.D. Pa. Dec. 19, 2022) ("Saunders fails to allege actual injury to his access to courts, as he fails to allege what underlying claim he was unable to pursue . . . . Saunders's conclusory statement that he 'has been unable to pursue legal claims in court' is not sufficient to plead actual injury."); *Lawson v. City of Philadelphia*, No. 22-3672, 2022 WL 17155767, at *7 (E.D. Pa. Nov. 22, 2022) ("Lawson has not stated a plausible access to courts claim because he has not alleged an actual injury resulting from his inability to use the law library. He has not described anywhere in his Amended Complaint what 'nonfrivolous' or 'arguable' claim he has lost as a result of his inability to access the law library or its materials. Without allegations of an actual injury, any claim based on the denial of his ability to use the prison law library is not plausible."); *Turner v. Shoemaker*, No. 21-1552, 2021 WL 4948092, at *2 (M.D. Pa. Oct. 25, 2021) ("Turner alleges that prison law library access is necessary 'to aid in the defense to his case,' but he does not allege an actual injury to his access to the courts. He does not make any specific allegations as to how the lack of library access has hindered the defense of his case or how it will hinder him in the future."). Accordingly, this claim against Aviles, Lt. Williams, and John Doe HCCF Correctional Officers 1–10 will be dismissed without prejudice.

### G.  Claims for Denial of Right to Counsel

Lawson alleges that he has been deprived of his right to counsel because, "after being sent over two hours away" from CCCF to HCCF, lawyer visits were not in person (DE 3 at 3–4), and phone and video calls were "plagued with various issues" (*id.* at 5).

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Phila.*, No. 11-

1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)). "With respect to restrictions on attorney contact with clients, the Supreme Court has held that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys and that prison regulations and practices that unjustifiably obstruct the availability of professional representation are invalid." *Ortiz v. City of Phila.*, No. 21-3100, 2022 WL 1443425, at *6 (E.D. Pa. May 6, 2022) (cleaned up). "Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* (cleaned up). "A prison regulation restricting a pretrial detainee's contact with his attorney is unconstitutional where it unreasonably burdens the inmate's opportunity to consult with his attorney and to prepare his defense." *Id.* (cleaned up). Here, there are no well-pleaded facts to support a reasonable inference that HCCF's technological difficulties are the result of a prison regulation or practice that unjustifiably obstructs the availability of professional representation.

Moreover, Lawson's belief that video and telephone calls are not as effective as in-person visits with counsel does not state a Sixth Amendment claim under § 1983. "There is no constitutional right for a pretrial detainee to enjoy the most sophisticated or convenient mode of communication." *Lowery v. Westchester Cty. Dep't of Correction*, No. 15-4577, 2017 WL 564674, at *4 (S.D.N.Y. Feb. 10, 2017); *see also Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988) ("[S]tates have no obligation to provide the best manner of access to counsel. Rather, restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel.").

Finally, Lawson has not alleged that prison officials prevented his attorney from travelling to see him. Rather, the implication is that his attorney prefers not to travel to Hudson

County to communicate with him. Thus, Lawson has failed to allege the personal involvement of any defendant. *See*, *e.g.*, *Martin*, 2023 WL 4398492, at *4 ("Plaintiff next attempts to plead that the jail officials have hindered his ability to meet with his criminal attorney and prepare for trial as the Hudson County jail's conferencing and communications systems are often broken and his attorney does not wish to travel to meet him in person[.] Plaintiff, however, has not pled that there is any impediment to his meeting in person with counsel other than counsel's desire not to travel to see him . . . . Ultimately, Plaintiff has failed to plead that the named supervisory defendants are personally involved in his lack of meetings with his attorney as it is the attorney, and not those Defendants, who chooses whether or not to visit Plaintiff in person.").

Accordingly, for these reasons, Lawson's right-to-counsel claim will be dismissed.

\*      \*      \*

In summary, Lawson's claims against HCCF, CCBC, HCBF, and HCCF Medical Department are not amenable to suit under § 1983. Thus, the claims against these defendants are dismissed with prejudice.

Lawson's claims against CCCF Warden Caldwell; CCCF Captain Braggs; HCCF former Director Edwards; HCCF Warden Aviles; HCCF Lt. Williams; John Doe HCCF correctional officers 1–10; John and Jane Doe HCCF healthcare providers 1–10 are dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). This is, however, an initial screening, and the Court cannot state that amendment would be futile. Accordingly, the dismissal of claims against CCCF Warden Caldwell; CCCF Captain Braggs; HCCF former Director Edwards; HCCF Warden Aviles; HCCF Lt. Williams; John Doe HCCF correctional officers 1–10; John and Jane Doe HCCF healthcare providers 1–10 is without prejudice.

Lawson may file, within 60 days, a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile). Lawson is advised that any proposed amended complaint must comply with the pleading standards set forth above. Lawson is further advised that, should he choose to file an amended complaint, supplemental submissions will not be considered. Any amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. It shall set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Lawson is advised that neither conclusory allegations nor broad allegations will set forth a cognizable claim. Finally, Lawson should file the amended complaint on this Court's approved prisoner civil rights form, which the Clerk of the Court shall be directed to send him.

## III.   CONCLUSION

For the reasons above, Lawson's complaint is dismissed with prejudice in part and without prejudice in part. An appropriate order follows.


DATED:  October 23, 2023

                                        /s/ Kevin McNulty
                                        _____
                                        KEVIN MCNULTY
                                        United States District Judge